IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| ALPHA PROTECTIVE SERVICES, INC., | : | Case No. 12-70482 |
|     Debtor. | : | Chapter 7 |

| | | |
|---|---|---|
| NEIL C. GORDON, as Trustee in Bankruptcy | : | |
| for Alpha Protective Services, Inc., | : | |
|     Plaintiff, | : | |
| v. | : | Adversary Proceeding |
| | : | No. _____ |
| JAMES LEE HARRISON; | : | |
| HARRISON MANAGEMENT AND | : | |
| CONSULTING GROUP, LLC; and GARY | : | |
| HARRISON, as an alter-ego of Harrison | : | |
| Management Group, LLC, or as Immediate | : | |
| Transferee under Harrison Management | : | |
| Group, LLC, | : | |
|     Defendants. | : | |

## **COMPLAINT**

COMES NOW **Neil C. Gordon, as Trustee in Bankruptcy for Alpha Protective Services, Inc. (herein "Plaintiff" or "Trustee"),** and brings the within Adversary Proceeding against **James Lee Harrison** (herein "J. Harrison"), **Harrison Management and Consulting Group** (herein "HMC"), and **Gary Harrison**, as an alter-ego of Harrison Management Group, LLC, or as Immediate Transferee under Harrison Management Group, LLC (herein "G. Harrison"), and says for cause shows the following:

### JURISDICTION

1.

The U.S. District Court has jurisdiction pursuant to 28 U.S.C. §1334 (b) as all claims herein arise under Title 11 of the U.S. Code.

2.

This Court exercises this Jurisdiction pursuant to the standing order of reference entered pursuant to 28 U.S.C. § 157(a).

3.

The matters herein are such as to make this a "core proceeding" which this Court may hear and determine pursuant to 28 U.S.C. §157 (b)(2) (F),(H), (O) .

4.

The claims put forth in the Adversary Proceeding in Counts One, Two, Four, Five, Six, Seven, Eight, and Nine are such as to make it to be within the parameters for this Court to make final determination, as such parameters have been set by the United States Supreme Court in Stern v. Marshall, 131 S.Ct. 2594 (2011).

5.

The claims asserted in the remaining Count (Count Three), although a "core proceeding" matter, may fall outside the parameters within which this Court may make final determination under Stern v. Marshall, and may be required to be referred to the District Court for final determination.

PARTIES AND MATERIAL NON-PARTIES

6.

Alpha Protective Services, Inc. ("Debtor") is a Georgia Corporation and is a Chapter 7 Debtor, which filed a voluntary Chapter 11 bankruptcy case on April 12, 2012, and whose case was converted to a Chapter 7 bankruptcy case on December 20, 2012, so that the Debtor continues as a Chapter 7 Debtor in a pending Chapter 7 bankruptcy case.

7.

Neil C. Gordon ("Trustee" or "Plaintiff") is the Court appointed Chapter 7 trustee for the Debtor's estate, having been appointed as such on or about December 20,2012.

8.

Jeffrey B. Brinson ("Brinson") is the Chief Executive Officer and sole shareholder of the Debtor. Brinson is himself a debtor in a Chapter 7 bankruptcy case which is pending *sub nom* In re Brinson, 12-70958 (B.C. Middle District of Georgia, 2012). There has been no grant or denial of discharge in that case so Brinson's automatic stay continues in place. Trustee, on behalf of Alpha, is a claim holder in that case. Trustee is stay barred to join Brinson as a party to this adversary proceeding.

9.

Bank of America ("BOA") was the Debtor's primary lender and secured creditor prior to the filing of the Chapter 11 case, on April 12, 2012.  Alpha had a number of bank accounts, some with BOA and some not, but as is relevant to the allegations of this Adversary Proceeding there were two:

    (a)    the Debtor maintained BOA account number XXX-XXX-9699, as a Debtor-in-Possession general operating account (herein "DIP Account");

    (b)    the Debtor maintained BOA account number XXXX-XXXX-9699, as a pre-petition general operating account (herein "GOA account"). .

BOA had a security interest in each of these accounts and under the terms of the various cash collateral accounts had rights in the DIP account as secured by replacement funds.

10.

Harrison Management and Consulting Group, LLC ("HMCG")   is a Georgia limited liability company, having its principal place of business, whereby it may be served with process at through its registered agent Gary L. Harrsion, 1701 Colonial Dr., Thomasville, Georgia 31757. HMCG entered into a "Management Services Agreement" with the Debtor on or about January 1, 2005.   Trustee alleges on best information and belief that HMCG had no business activities after June 22, 2007, when a settlement agreement was reached between and among Debtor, HMCG, and Brinson by which certain sums were to be paid by Debtor to HMCG.

11.

The Debtor alleges on best information and belief that HMC is a company owned or controlled  completely by Gary Harrison ("G.Harrison"), who may be served with process individually at the same address, and further also alternatively on best information and belief is an alter ego of G. Harrison.

12.

G. Harrison was a member of the Board of Directors of Debtor at the time of execution of the Management Services Agreement, on January 1, 2005, and through June 22, 2007.

13.

G. Harrison is an adult resident citizen of the state of Georgia and may be served with process by first class mail at his home address of 1701 Colonial Dr., Thomasville, Georgia 31757.

James L. Harrison ("J. Harrison"), who may be served with process individually, at 8126 Ozell Road, Boston, GA 31626, was a 49% minority, shareholder of the Debtor through June 22, 2007, when a settlement agreement was reached between and among Debtor, J. Harrison, and Brinson, by which Brinson was to pay, out of Alpha funds, certain moneys to J. Harrison for the purchase, by Brinson, of Harrison's stock. Although the document was not clear, J. Harrison continued to be a minority shareholder or had a security interest in what has been his minority share of the Debtor through and after date of case filing. J. Harrison is also G. Harrison's father.

14.

Neither HMCG nor G. Harrison have filed a proof of claim herein on the claims owed to HMCG.

15.

J. Harrison has not filed a proof of claim on the claims owed by Alpha to HMCG.

16.

HMCG, Gary Harrison, and J. Harrison, are, and have been at all relevant times, insiders to the Debtor.

OPERATIVE FACTS

17.

Under the terms of the Management Services Agreement, referenced above, HMCG was to provide certain services for Debtor. HMCG was a company operated by G. Harrison, J. Harrison's son. J. Harrison had some interest in HMCG and was a shareholder (holding a 49% interest) of Debtor. J. Harrison was friends with Brinson.

18.

A "falling out" between J. Harrision and Brinson occurred, and Alpha attempted to terminate the "Management Services Agreement" on or about April 18, 2006.

19.

HMCG and J. Harrison instituted litigation against the Debtor and Brinson on May 12, 2006, in Thomas County Superior Court, Case No. 06-CV-426, by which HMCG and J. Harrison sought a receiver to be appointed and also monetary damages. There were counterclaims.

20.

After mediation, settlement was reached by which Brinson agreed to acquire J. Harrison's 49% ownership interest in Alpha for certain cash considerations. Alpha and Brinson did not comply with the settlement. After a motion to enforce the settlement was filed, on March

30, 2007, and after a hearing before the Thomasville Superior Court, the parties reach another settlement agreement which replaced and superceded the earlier. A true and accurate copy of that settlement agreement is attached hereto and incorporated by reference as Exhibit "1".

21.

Under the terms of the substituted settlement agreement, several events were to occur.

22.

First, J. Harrison was to transfer all of his stock in Alpha to Brinson, but the stock was to be held by J. Harrison until payment in full of a settlement of $1,543,500.00.

23.

$1,000,000.00 was paid at closing of the settlement, which occurred on or about June 26, 2007. The balance of the purchase price was to be paid over the next 84 months, starting August 1, 2007, to be paid with simple interest at the rate of 9% per annum, for 84 months, in installments in the amount of $8,744.21 per month.

24.

This was a Note executed by Brinson, but guaranteed by Alpha. Installments were made through the March, 2012 payment. A true and accurate copy is attached as Exhibit "2". This note is herein the "J. Harrison note".

25.

Under the terms of the settlement, in addition to the $1 million cash payment which was made to J. Harrison out of Alpha funds, there was an additional stream of $480,942.55 in payments from Alpha to J. Harrison on the J. Harrison note. Installments were paid in the amount of $8,744.21 per month. A total of $1,480,942.55 was paid from Alpha funds to J. Harrsion between August 1, 2007 and date of case filing. Installments totaling $96,186.31 were paid to J. Harrison within one year of case filing. $201,116.83 was paid within two years of case filing. $410,977.87 was paid within four years of case filing.

26.

 Second, Alpha agreed to pay HMCG $1,606,500.00 in settlement of all claims of HMCG against Alpha, under the terms of a promissory note in that amount, same to be paid with 9% interest, over 84 months, in the amount of $25,847.10 per month. The first payment fell due on August 1, 2007.  A true and accurate copy is attached as Exhibit "3".

27.

This note is herein the "HMCG note" Installments were made on terms through the March, 2012 payment. This note was executed by Alpha but guaranteed by Brinson.

28.

Under the terms of the settlement, HMCG, received no cash but was to be paid $25,847.10 per month, starting with August 1, 2007, so that a total of $1,421,590.50 was paid to HMCG between August 1, 2007 and date of case filing. Installments of $284,813.10 were paid within one year of case filing.

29.

The J. Harrison Note was without valuable consideration to the Debtor. All payments made thereunder, as well as the cash payment, were also without valuable consideration, so that the note and all payments were fraudulent.

30.

The HMCG Note was with valuable consideration to the Debtor but was not incurred in the ordinary course of business of the debtor, so that all payment made within a year were preferential.

31.

Trustee alleges on best information and belief that other payments were made to J. Harrison, HMCG or G. Harrison which were also without valuable consideration or in payment of antecedent debt within the two years of case filing.

32.

All of J. Harrison, HMCG and G. Harrison are insiders to the Debtor and have been such at all material times.

### COUNT ONE

PREFERENCE AVOIDANCE UNDER ll U.S.C. § 547
REGARDING THE J. HARRISON NOTE

33.

With respect to the J. Harrison note, payments were made by the Debtor, which had guaranteed that note, are subject to recovery as preferential, in the amount of $26,232.63, since each payment was to or for the benefit of the creditor, J. Harrison, for and on account of an antecedent debt, and made at a time when the Debtor was insolvent, and made within 90 days prior to case filing, such that the creditor would receive more than such creditor would receive if the case were a case under Chapter 7 of Title 11, the payments had not been made, and the creditor received payment of such debt to the extent provided by the provisions of Title 11.

## COUNT TWO

INSIDER PREFERENCE AVOIDANCE UNDER 11 U.S.C. § 547
REGARDING THE J. HARRISON NOTE

34.

With respect to the J. Harrison note, the payments made by the Debtor, which has guaranteed that note, are subject to recovery as preferential, in the amount of $96,186.31, since each payment was to or for the benefit of an insider for an on account of an antecedent debt, and made at a time when the Debtor was insolvent, and made between 90 days and one year prior to the date of case filing, such that the insider (J. Harrison) would receive more than such insider would receive if the case were a case under Chapter 7 of Title 11, the payment had not been made, and the insider received payment of such debt to the extent provided by the provisions of Title 11.

## COUNT THREE

FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548
REGARDING THE J. HARRISON NOTE

35.

Furthermore, each of the payments made to J. Harrison within two years of case filing, were made voluntarily by the Debtor and were such as the Debtor received less than equivalent value in exchange for such transfer or obligation, since the value passed to Brinson, and were made when the Debtor was insolvent. Such payments are subject to recovery as fraudulent under 11 U.S.C. § 548 in the amount of $201,116.83.

## COUNT FOUR

FRAUDULENT TRANSFER AVOIDANCE UNDER 11 U.S.C. § 544
REGARDING THE J. HARRISON NOTE

Part One (Georgia Law Claims)

36.

Under 11 USC §544 (a), the Trustee has the rights and powers of a hypothetical creditor who extended creditor of the Debtor at the time of the commencement of the case, and who obtained at such time with respect to such creditor, a hypothetical judgment lien on all property on which a creditor on a simple contract could have obtained such a judicial lien.

37.

The Trustee has the rights of a hypothetical judgment lien creditor under Georgia law, generally, under the Georgia Uniform Fraudulent Transfers Act, OCGA § 18-2-70 *et seq*, and specifically, under Georgia law O.C.G.A. § 18-2-74(a)(2), the Trustee may avoid as fraudulent a transfer made without the debtor's having received reasonably equivalent value in exchange for the transfer at a time when the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, and where the debtor reasonably believed or reasonably should have believed that it would incur debts beyond the debtor's ability to pay as they fall due.

38.

Alternatively, the Trustee, exercising Georgia law O.C.G.A. § 18-2-75 (a), exercising the rights of an actual lien creditor, whose claim arose before the transfer was made, may avoid payments were made without reasonably equivalent value in exchange at a time when the debtor was insolvent or would have become insolvent as a result of the transfer or obligation.

39.

The Trustee has the rights of a hypothetical judgment lien creditor under Georgia law, and under Georgia law O.C.G.A. § 18-2-74(a)(2), the Trustee may avoid as fraudulent a transfer made without the debtor's having received reasonably equivalent value in exchange for the transfer at a time when the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, and where the debtor reasonably believed or reasonably should have believed that it would incur debts beyond the debtor's ability to pay as they fall due.

40.

Alternatively, the Trustee, exercising Georgia law, O.C.G.A. § 18-2-75(a), exercising the rights of an actual lien creditor, whose claim arose before the transfer was made, the payments were made without reasonably equivalent value in exchange at a time when the debtor was insolvent or would have become insolvent as a result of the transfer or obligation.

41.

The Trustee is entitled to recover, either under O.C.G.A. § 18-2-74(a)(2) or under O.C.G.A. § 18-2-75(a), the value of all payments made within four (4) years of case filing, as

limited by O.C.G.A. § 18-2-79, and the Trustee is therefore entitled to recover against Defendant in the amount of $410,977.87, and such other amounts as may be proved at trial.

Part Two (federal law claims)

42.

Under 11 USC § 544 (b), the Trustee has the rights and powers of an actual creditor holding a claim which is allowable under 11 USC Section 502. The United States of American, by and through the IRS ("IRS") is such a claim holder and has been such since prior to June 6, 2006, the date upon which the first payment was made to J. Harrison, and through date of case filing. The IRS has and has had substantial claims for unpaid Employer Taxes.

43.

Exercising the rights of the IRS is as an actual claim holder, Trustee may recover either under the Federal Debt Collections Procedures Act, 28 U.S.C. § 3001 et seq, or under the Uniform Fraudulent Transfer Act, under the Georgia Uniform Fraudulent Transfer Act, as cited above in Part One, of this Count.

44.

Under the Federal Debt Collections Procedures Act, at 28 USC § 3304 (a) to the extent that the Trustee was a creditor before June 6, 2006, the Trustee may avoid payments made without reasonably equivalent value in exchange at a time when the debtor was insolvent or would have become insolvent as a result of the transfer or obligation.

45.

Under the Federal Debt Collections Procedures Act, at 28 USC § 3304 (b), to the extent that the IRS was a creditor before or after June 6, 2006, the Trustee may avoid as fraudulent a transfer made without the debtor's having received reasonably equivalent value in exchange for the transfer at a time when the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, and where the debtor reasonably believed or reasonably should have believed that it would incur debts beyond the debtor's ability to pay as they fall due.

46.

The Trustee is entitled to recover, either under 28 USC § 3304 (a) or 28 USC § 3304 (b) the value of all payments made between June 6, 2006, and date of case filing. 26 USC

§ 6502(a)(1); 28 U.S.C. § 3304 (a).  See e.g., In re Republic Windows and Doors, LLC, 2011 WL 5975256  (B.Ct. ND Ill 2011).

47.

The Trustee is also entitled to recover under the Georgia Uniform Fraudulent Transfer Act, but as limited by 26 USC  § 6502(a)(1), for the reasons and causes set forth above in Part One of this Count, the allegations of which are incorporated by reference.  See e.g. In re Republic Windows and Doors LLC (applying the longer § 6502(a)(1) I.R.S.  limitations to Illinois fraudulent transfer law). See also U.S. Holmes, 727 F. 3d. 1230 (10th Cir. 2013) (non bankrupcy case applying the extended IRS limitations of § 6502(a)(1) to a state law claim asserted by the U.S.A. to recover taxes).

48.

The Trustee is therefore entitled to recover against Defendant in the amount of $1,480,942.55, and such other amounts as may be proved at trial.

## COUNT FIVE

PREFERENCE AVOIDANCE UNDER ll U.S.C. § 547 REGARDING THE HMCG NOTE

49.

With respect to the J. Harrison  note, payments were  made by the Debtor, which had guaranteed that note, are subject to recovery as preferential, in the amount of $77,541.30, since each payment was to or for the benefit of the creditor, HMCG, for and on account of an antecedent debt, and made at a time when the Debtor was insolvent, and made within 90 days prior to case filing, such that the creditor would receive more than such creditor would receive if the case were a case under Chapter 7 of Title 11, the payments had not been made, and the creditor received payment of such debt to the extent provided by the provisions of Title 11.

## COUNT SIX

INSIDER PREFERENCE AVOIDANCE UNDER 11 U.S.C. § 547
REGARDING THE HMCG NOTE

50.

With respect to the HMCG note, the payments made by the Debtor, which has guaranteed that note, are subject to recovery as preferential, in the amount of $232,623.90, since each payment was to or for the benefit of an insider (HMCG) for an on account of an antecedent debt, and made a

a time when the Debtor was insolvent, and made between 90 days and one year prior to the date of case filing, such that the insider would receive more than such insider would receive if the case were a case under Chapter 7 of Title 11, the payment had not been made, and the insider received payment of such debt to the extent provided by the provisions of Title 11.

### COUNT SEVEN
INSIDER PREFERENCE AVOIDANCE UNDER 11 U.S.C. § 544
REGARDING THE HMCG NOTE

51.

Under 11 USC §544 (b) Trustee has the rights and powers of an actual creditor holding a claim which is allowable under 11 USC § 502 . The United States of American, by and through the IRS ("IRS") is such a claim holder and has been such since prior to June 6, 2006, the date upon which the first payment was made to J. Harrison, and through date of case filing. The IRS has and has had substantial claims for unpaid Employer Taxes.

52.

Under the Federal Debt Collections Procedures Act, at 28 USC § 3304 (a) to the extent that the Trustee was a creditor before June 6, 2006, the Trustee may avoid payments made to an insider in payment of an antecedent debt at a time when the Debtor was insolvent and the insider had reasonable cause to believe that the Debtor was insolvent.

53.

Payments made on the HMCG note, to HMCG or to G. Harrison, were made at a time when the Debtor was insolvent and when the payees had reasonable cause to believe that the Debtor was insolvent.

54.

The Trustee is entitled to recover, either under 28 USC § 3304 (a) the value of all payments made between June 6, 2006, and date of case filing. 26 USC § 6502(a)(1); 28 U.S.C. § 3004 (a). See e.g., In re Republic Windows and Doors, LLC, 2011 WL 5975256 (B.Ct. ND Ill 2011).

55.

The Trustee is therefore entitled to recover against Defendants HMCG and G. Harrison for payments made back to June 6, 2006, in the amount of $ 1,421,590.50, and such other amounts as may be proved at trial.

## COUNT EIGHT

RECOVERY AGAINST G. HARRISON UNDER 11 U.S.C. § 550(a)(1)

56.

On best information and belief, all payments made by the Debtor to HMCG were paid directly over to G. Harrison, or through HMCG as an alter-ego for G. Harrison, and G. Harrison is personally liable for the avoided transfers, as an initial transferee under 11 U.S.C. § 550(a)(1)

## COUNT NINE

RECOVERY AGAINST G. HARRISON UNDER 11 U.S.C. § 550(a)(2)

57.

Alternatively, if the Court determines that HMCG is not an alter-ego of G. Harrison, then the Trustee alleges that on best information and belief that G. Harrison was the immediate transferee under HMCG as the initial transferee, and did not give value for receipt of the retransfer from HMCG and was not a good faith transferee, so that all amounts recoverable against HMCG herein above are also recoverable against G. Harrison as an immediate transferee under 11 U.S.C. § 550(a)(2).

THEREFORE, the premises considered, the Trustee prays for the following items of general and special relief:

a) that the Trustee have recovery against J. Harrison of all preferences, under Count One, in the amount set forth therein;

b) that the Trustee have recovery against J. Harrison of all insider preferences as stated in Count Two in the amount set forth therein;

c) that the Trustee have recovery against J. Harrison of all fraudulent transfers as stated in Count Three in the amount set forth therein;

d) that the Trustee have recovery against J. Harrison of all fraudulent conveyances (under state law) as stated in Count Four in the amount set forth therein;

e) that the Trustee have recovery against HMCG of all preferences under Count Five in the amount set forth therein;

f) that the Trustee have recovery against HMCG of all insider preferences as stated in Count Six in the amount set forth therein;

(g) the Trustee have recovery, under 11 USC §544 (b), exercising rights under federal law, against HMCG of all insider preferences as stated in Count Seven in the amount set forth therein;

h) that the Trustee have recovery against G. Harrison, as the alter-ego of HMCG, in all amounts recoverable above against HMCG under Count Eight;

i) that, alternatively, that the Trustee have recovery against G. Harrison as immediate transferee of HMCG as the immediate transferee, in the amount of all amounts recoverable above against HMCG, under Count Nine;

j) that the Trustee have other general relief as to which equity doth appertain and by which justice would be served.

Respectfully submitted,

/s/ Fife M. Whiteside

_____

FIFE M. WHITESIDE
Special Counsel for Trustee, Plaintiff
Ga. State Bar No. 756025

P. O. Box 5383
Columbus, Georgia  31906
706/320-1215
whitesidef@mindspring.com