**SIGNED this 26 day of May, 2015.**



_____
John T. Laney, III
United States Bankruptcy Judge

### IN THE UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | | |
| ALPHA PROTECTIVE SERVICES, INC., | * | Chapter 7 |
|     Debtor, | * | Case Number:  12-70482jtl |
| | * | |
| NEIL C. GORDON, as Trustee in Bankruptcy | * | |
| For Alpha Protective Services, Inc., | * | |
| | * | |
|     Plaintiff, | * | Adversary Proceeding |
| | * | Number:  14-7019 |
| v. | * | |
| | * | |
| JAMES LEE HARRISON; HARRISON | * | |
| MANAGEMENT AND CONSULTING, LLC, | * | |
| AND GARY HARRISON, as an alter-ego of | * | |
| Harrison Management Group, LLC, or as | * | |
| Immediate Transferee under Harrison | * | |
| Management Group, LLC, | * | |
| | * | |
|     Defendants. | * | |

_____

### MEMORANDUM OPINION

This matter comes before the Court on a Motion for Judgment on the Pleadings (the

"Motion") filed by James Lee Harrison ("J. Harrison"), Gary Harrison ("G. Harrison"), and

Harrison Management and Consulting Group ("HMCG"), (collectively, the "Defendants"). The Court heard oral arguments on December 23, 2014, in Columbus, Georgia. At the conclusion of the hearing, on request of the parties, the Court extended the briefing period to allow time for the parties to brief additional issues raised during oral argument. The supplemental briefing period expired on February 2, 2015.  The Court has carefully considered the pleadings and briefs, the parties' oral arguments, and the applicable statutory and case law. For the reasons set forth below the Court will grant in part and deny in part the Defendants' Motion for Judgment on the Pleadings.

**Background**

I.    Factual History

This adversary proceeding arises out of the underlying bankruptcy case of Alpha Protective Services, Inc., ("Alpha" or "Debtor"). Alpha was previously in the business of providing comprehensive security and protective services to the United States Government and private institutions.   Alpha was originally formed by Jeffrey B. Brinson ("Brinson") and J. Harrison. Brinson was a 51% shareholder and served as the company's Chief Executive Officer. J. Harrision held the remaining 49% of the Alpha shares. On January 15, 2005, Alpha entered into a Management Services Agreement ("MSA") with HMCG. Under the terms of the MSA, HMCG was to provide certain management and consulting services to Alpha. HMCG is owned by G. Harrison, who is the son of J. Harrison. In addition, G. Harrison was member of the Alpha Board of Directors at the time the MSA was signed.

At some point Brinson, J. Harrison, G. Harrison, and HMCG had a falling out, and Alpha attempted to terminate the MSA. This conflict resulted in lengthy litigation, whereby HMCG and J. Harrison sought, among other things, to have a receiver appointed to liquidate Alpha. Brinson

and Alpha filed counterclaims, and ultimately the parties entered a settlement agreement, whereby Brinson agreed to buy out J. Harrison's 49% percent stake in Alpha. Brinson did not comply with the terms of the settlement and HMCG and J. Harrison brought an action to enforce the settlement. This litigation resulted in another settlement, which was memorialized in a settlement agreement (the "Settlement Agreement") between the parties which was to supersede the prior settlement agreement and dispose of all claims between the parties.

Under the terms of the Settlement Agreement, several events were to take place. First, J. Harrison was to transfer all of his stock in Alpha to Brinson for a purchase price of $1,543,500, of which $1,000,000 was to be paid at closing. The remaining $543,500 was to be paid pursuant to a promissory note and security agreement over eighty-four (84) months, at a rate of nine (9) percent per annum (the "J. Harrison Note"), beginning in August 2007. Under the J. Harrison Note, J. Harrison was to retain a security interest in the transferred shares. The J. Harrison Note was signed by Brinson, but guaranteed by Alpha. Between August 1, 2007, and the date of case filing, Alpha paid $1,480,942.55 to J. Harrison pursuant to the terms of the J. Harrison Note.[1]

Second, Alpha agreed to pay HMCG $1,606,500 in settlement of all claims of HMCG against Alpha, pursuant to a promissory note in that amount, to be paid over eighty-four (84) months at nine (9) percent per annum (the "HMCG Note"). This comes out to a payment of $25,847.10 per month beginning in August 2007. Under the terms of the HMCG Note, HMCG was to retain a security interest in the assets of Alpha. The HMCG Note was executed by Alpha, but was guaranteed by Brinson. Pursuant to the terms of the HMCG Note payments totaling $1,421,590.50

---

[1] In addition to the $1,000,000 paid at closing, the $1,480,942.55 includes installments which were made as follows during the four years prior to the petition date: (1) Payments totaling $96,186.31 were paid to J. Harrison within one year of the petition date; (2) Payments totaling $201,116.83 were paid to J. Harrison within two years of the petition date; and (3) payments of $410,977.87 were paid to J. Harrison within four years of case filing.

3

were made between August 1, 2007, and the date the case was filed. Of that total, $284,813.10 was paid within one year of case filing.

II.    Procedural History

On April 12, 2012, (the "Petition Date"), Alpha sought protection under Chapter 11 of the Bankruptcy Code.  Thereafter, Alpha operated as a debtor in possession for approximately eight months, at which point the United States Trustee appointed a Chapter 11 Trustee to oversee the case. On December 20, 2012, this Court granted the Chapter 11 Trustee's motion to convert the case to a Chapter 7 liquidation case. The Trustee commenced this adversary proceeding on April 1, 2014, with the filing of the complaint against the Defendants. In his complaint the Trustee seeks to avoid and recover certain allegedly preferential and fraudulent transfers made by the Debtor to the Defendants. On September 30, 2014, the Defendants responded by filing the instant Motion seeking judgment on the pleadings and to have the Trustee's complaint dismissed pursuant to Federal Rule of Civil Procedure 12(c).

## Rule 12(c) Standard

Under Fed. R. Civ. P. 12(c), which is made applicable to Adversary Proceedings in Bankruptcy by Federal Rule of Bankruptcy Procedure 7012(c), a party may make a motion for judgment on the pleadings after the pleadings are closed, but not so late as to delay trial. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299, 1303 (M.D.Ga. 2013)(quoting *Palmer & Cay, Inc. v. Marsh McLennan Cos., Inc*, 404 F.3d 1297, 1303 (11th Cir. 2005)). Therefore, a court's analysis on a motion for judgment on the pleadings is almost identical to that used to decide a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

*Id.* Accordingly, a court's consideration on a motion to dismiss is generally "limited to the four corners of the complaint." *Id.* at 1303. However, a court is permitted to consider other sources when ruling on a motion to dismiss, such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). As a result, judgment on the pleadings is proper when the complaint fails to state a claim upon which relief may be granted. *Id.*

"At the pleading stage, a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"*Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). Under Rules 12(b)(6) and 12(c) a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. When evaluating a Rule 12(b)(b) motion to dismiss, a court "must constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *American Family Life Assur. Co. of Columbus v. Intervoice, Inc.*, 659 F. Supp. 2d 1271, 1278 (M.D. Ga. 2009)(quoting *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005)). Although the plaintiff is not required to provide "detailed factual allegations," he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Accordingly, a complaint must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. 544, 555 (2007). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

The "plausibility standard" outlined in *Twombly* and *Iqbal* "does not impose a probability requirement at the pleading stage," but instead requires "sufficient factual allegations "to raise a

5

right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Such a complaint must

contain enough facts "to raise a reasonable expectation that discovery will reveal evidence of the

plaintiff's claim or claims."*Intervoice*, 659 F. Supp. 2d at 1278 (internal quotations omitted).

However, a plaintiff is not required to plead specific facts, and the complaint need only provide

"the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*,

550 U.S. at 555.  Moreover, "[d]etermining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679.  As the Court noted in *Twombly*, "a well-

plead complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that recovery is very remote and unlikely." 550 U.S. at 556. With that standard in

mind, the Court now turns to the merits of Defendants' Motion.

### Discussion

The Complaint contains nine counts seeking avoidance and recovery against Defendants

under various fraudulent transfer and preference theories. Defendants assert that dismissal is

appropriate because the Trustee has failed to adequately plead the factual allegations required to

make out each of the claims listed in the Complaint. According to Defendants, after stripping away

the bare legal conclusions, the remaining allegations are insufficient to state a claim for relief that

is plausible on its face.

I.   Count I and V: Ordinary Preference Claims Under 11 U.S.C. § 547(b) against J. Harrison
     and HMCG.

In Counts I and V of his complaint the Trustee seeks to avoid as preferential certain payments

made by Alpha to J. Harrison and HMCG. Avoidance actions under 11 U.S.C. § 547 deal with

transfers made between a debtor and creditor prior to the filing of the bankruptcy petition. Section

547 allows a trustee to avoid pre-petition transfers made by a debtor to a creditor, provided that

each element of § 547(b) is met. 11 U.S.C. § 547 (b).  To do so, "the trustee must show that the

payment was (1) to the creditor, (2) on account of a previous debt, (3) made while the debtor was

insolvent, (4) made [within] 90 days before the bankruptcy petition was filed, and (5) [was]

effective in enabling the creditor to receive more than it would have received had the debtor's

estate been liquidated under Chapter 7." *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir.

2009) (*citing* 11 U.S.C. § 547(b)).  At issue in this case is whether the Trustee has adequately pled

facts to establish the Debtor's insolvency at the time of the payments, that the payments were made

during the applicable reach back period, and that the payments allowed J. Harrison and HMCG to

receive more than each would have received under a Chapter 7 distribution if the payments had

not been made.

    a.   Trustee Has Sufficiently Alleged Insolvency

To avoid payments under § 547, the Trustee must establish that the Debtor was insolvent at

the time the payments were made. 11 U.S.C. § 547(b)(3). Defendants allege that the Trustee has

failed to plead facts which establish that Alpha was insolvent at the time of the payments to J.

Harrison and HMCG. The Defendants argue the complaint "contains only conclusory statements

or recitals of legal definitions, which are insufficient to allege the essential element of insolvency,"

and that the Trustee does "not plead a single fact" to support to the legal conclusion that the debtor

was insolvent when the payments were made.[2]  The Court disagrees.

Section 547(b)(4)(A) of the Bankruptcy Code allows for the avoidance of certain payments

made "on or within 90 days before the date of the filing of the petition."  Under section 547(f) of

---

[2] Def. Mot. J. on the Pleadings p. 15-16, September 30, 2014, ECF No. 26.

the Bankruptcy Code, the debtor is presumed to have been insolvent during the ninety-day period immediately preceding the bankruptcy filing. 11 U.S.C. § 547(f). This presumption is rebuttable, but rebutting the presumption requires the presentation of evidence, which a court is not permitted to consider at the motion to dismiss stage. *See Bank of Camilla*, 939 F. Supp. 2d at 1304 (explaining that a court's review of a motion to dismiss is generally limited to the four corners of the complaint, but a court may consider any documents referred to in the complaint that are central to the claims). Therefore, Alpha is presumed to be insolvent for the purposes of avoiding payments under § 547(b)(4)(A). Accordingly, the Trustee has adequately pled the element of insolvency with respect to his § 547(b)(4)(A) ordinary preference claims.

> b. Trustee Has Pled That the Transfers Occurred Within the Ninety Day Reach-back Period.

Next, Defendants assert that the Trustee has failed to properly plead facts to establish the payments to J. Harrison and HMCG were made during the applicable look back period, which is ninety days for ordinary preference claims under 547(b)(4)(A). According to Defendants, no transfers could have been made during this period because any transfer from Alpha to J. Harrison or HMCG occurred on the closing date of the Settlement Agreement, which was June 29, 2007.[3] Under this theory, the Court is only to look at the closing date of the Settlement Agreement, wherein Alpha agreed to make a series of payments under the J. Harrison and HMCG Notes rather than the actual dates those payments were made. In support of this argument Defendants cite to the case of *Kipperman v. Onex Corporation*, where the court found that "the relevant date for determining the statute of limitation on a fraudulent conveyance claim is the date that the debtor incurred the obligation to make the transfer." 411 B.R. 805, 834 (N.D. Ga. 2009). In *Kipperman*,

---

[3] Under the terms of the Settlement Agreement, Alpha and Brinson agreed to a payment schedule whereby it would pay-off the balance of the J. Harrison and HMCG Notes in eighty-four equal monthly payments.

a liquidation trustee brought myriad claims, including preference and fraudulent transfer claims, against numerous defendants. *Id.* In a lengthy opinion, the United States District Court for the Northern District of Georgia analyzed what a trustee must prove in order to avoid a transfer as fraudulent or preferential. *Id*. However, the relevant portion of *Kipperman* cited by the Defendants deals with what a trustee must prove to avoid a transfer as fraudulent under 11 U.S.C. § 544, rather than what a trustee must plead to maintain a preference claim under § 547.  For that reason I am not persuaded by Defendants argument and find the court's holding in *Kipperman* is not applicable the Trustee's preference claims.

While it is true that actions to avoid fraudulent transfers under §§ 544 and 548 are structurally similar to preference actions under § 547, there are notable differences in the statutory language and each Code section governs distinctly different types of transfers. One telling difference is that § 547 allows avoidance only if the transfer at issue is one "for or on account of an antecedent debt owed by the debtor." 11 U.S.C. § 547(b)(2). Whereas, actions under §§ 544 or 548 apply to a broader class of transfers.  Although "antecedent debt" is not defined in the Code, a debt is antecedent when it is incurred before the transfer. *Black's Law Dictionary* 489 (10th ed 2014). Put simply, to be antecedent the debt must precede the transfer. A finding that a transfer occurs, for the purposes of calculating the § 547(b)(4) reach back period, upon the execution of a promissory note, rather than when payments are made on the note, would render the "antecedent debt" requirement of § 547(b)(2) meaningless as to promissory notes. As a result, it would be virtually impossible to recover payments made on a note because all payments would relate back to the date of execution. The statute does not support this position. Therefore, for the purposes of determining if a transfer occurred during the § 547 reach back period the relevant inquiry is whether the

payments on the antecedent debt occurred during the ninety days immediately preceding the date of case filing.

Here, the debt was incurred on the closing date of the Settlement Agreement, which was June 29, 2007. As pertinent here, the Settlement Agreement provided for the creation of the J. Harrison and HMCG Notes, and the payments the Trustee seeks to avoid were made pursuant to the terms of those notes. Therefore, the payments were "for or on account of an antecedent debt" of the Debtor, and if made during the ninety day period prior to the Petition Date may be subject to avoidance under § 547(b)(4)(A). The Trustee has alleged that Alpha made payments totaling $26,232.63 to J. Harrison within the ninety-days immediately preceding the case filing,[4] and that Alpha made payments totaling $77,541.30 to HMCG during that same period.[5] The Trustee also alleges that such payments were made pursuant to the terms of the J. Harrison and HMCG Notes, which were executed as part of the Settlement Agreement that closed on June 26, 2007. The Trustee's allegations are sufficient to put the Defendants on notice of what the Trustee seeks to avoid, and to raise a reasonable expectation that discovery will reveal evidence that the payments to J. Harrison and HMCG were made during the ninety day preference period.    Therefore, the Court finds the Trustee has properly alleged that the transfers occurred during the preference period.

     c.   Trustee Has Sufficiently Alleged Facts to Plausibly State That Defendants Received More Than They Would Have in a Hypothetical Chapter 7 Had the Payments to J. Harrison and HMCG Not Been Made.

The fifth element of the preference test requires the Trustee to demonstrate that the creditor received more money during the preference period than it would have received if (1) the transfer

---

[4] Compl. ¶ 33, April 1, 2014, ECF No. 1.
[5] Id. at ¶ 49.

had not been made, (2) the case were a Chapter 7 liquidation proceeding, and (3) it received

payment on its claims as provided for in the Bankruptcy Code. 11 U.S.C. § 547(b)(5). This is often

referred to as the "improvement of position test." The Complaint alleges payments totaling

$26,232.63 to J. Harrison during the ninety days immediately prior to the Petition Date. The

Complaint also alleges that Alpha made payments totaling $77,541.30 to HMCG during this same

period. These are significant amounts. The Trustee alleges that none of the Defendants has filed a

proof of claim in this case, and therefore the classification of their claim is unknown. The

Settlement Agreement purportedly calls for the creation of a security interest in the shares that J.

Harrison was to transfer to Brinson, but whether that security interest was perfected remains

unknown at this point. What is alleged, however, is that Bank of America was Alpha's primary

lender prior to filing and had a security interest in certain Alpha accounts. Therefore, the

Defendants' priority in the Chapter 7 distribution scheme is unclear. Viewing the Complaint in a

light most favorable to the Trustee, the Court considers the Defendants to be unsecured for the

purposes of this Motion, and therefore any distribution during the preference period likely allowed

Defendants to improve their position in the unsecured creditor pool.

The Trustee is not required to prove his case at the pleading stage.[6] Rather, the Trustee must

merely provide enough factual allegations to raise a reasonable expectation that discovery might

lead to evidence that J. Harrison and HMCG received more than they would have under the

Chapter 7 distribution provisions if the payments had not been made. The Trustee's allegations

that the Defendants received the payments during the preference period, coupled with the amounts

received by the Defendants, at a minimum, raises the likelihood Defendants improved their

---

[6] Defendants argue that the Trustee has failed to provide sufficient allegations to allow the Court to conduct a liquidation analysis to determine whether the Defendants received more than their fair share. The Court finds that the Trustee is not required to provide such detailed allegations in order to plausibly state a claim.

positions above the speculative level.    Accordingly, the Court finds that the Trustee has carried

his burden and plausibly alleged ordinary preference actions against J. Harrison and HMCG

II.    Count II and VI: Insider Preference Claims Under 11 U.S.C. § 547(b) against J. Harrison
and HMCG.

Counts II and VI of the Complaint seek avoidance under 11 U.S.C.§ 547(b)(4)(B), which

allows for the avoidance of payments made between ninety days and one year prior to the case

filing, provided all elements of § 547(b) are met and such payments were made to a creditor that

is also an insider of the debtor. As explained above the Trustee has adequately pled each element

for an "ordinary preference" claim under § 547(b). Therefore, the only issues remaining for the

Court to determine in regard to the Trustee's insider preference claims are whether the Trustee has

plausibly alleged that J. Harrison and HMCG were insiders of Alpha, whether Alpha made

payments to J. Harrison and HMCG during the period between ninety days and one year

immediately preceding the Petition Date, and whether Alpha was insolvent when it made those

payments.

a.    Trustee has plausibly alleged that J. Harrison and HMCG are insiders of Alpha.

Section 547(b)(4)(B) only applies to transfers made to creditors that are also insiders of the

debtor at the time the transfer is made. 11 U.S.C. § 547(b)(4)(B). As pertinent here, an insider of

a corporate debtor includes the following: (1) a director of the debtor; (2) an officer of the debtor;

(3) a person in control of the debtor; (4) a general partner of the debtor; (5) a relative of a general

partner, director, officer, or person in control of the debtor; or (6) an affiliate or insider of an

affiliate of the debtor. 11 U.S.C. § 101(31)(B)-(E). However, the list of insiders provided in Section

101(31) is not exclusive and insider status may be found even if the creditor falls outside those

categories listed in § 101(31). *See In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992). When considering whether a creditor is an insider of the debtor, courts focus on two factors: (1) the closeness of the relationship between the parties; and (2) whether the transaction was negotiated at arm's length. *Id*.; 5 *Collier on Bankruptcy* § 547.03[6] (Alan N. Resnick & Henry Sommer eds., 16th ed. 2014). Therefore, the question of whether a creditor is an insider of the debtor is primarily a question of fact to be decided at some point after the pleading stage.

Here, the Trustee has alleged that J. Harrison was a 49% shareholder in Alpha at the time of the Settlement Agreement. In addition, the Complaint alleges that G. Harrison, who is the son of J. Harrison, was a member of Alpha's Board of Directors at the time of the execution of the Settlement Agreement. It is also alleged that both J. Harrison and G. Harrison were shareholders of HMCG. Therefore, the Trustee has alleged that G. Harrison is a statutory insider of the debtor, and that his company HMCG is also a statutory insider of the debtor. The Trustee has also alleged that J. Harrison is a statutory insider of Alpha by virtue of his substantial holdings in Alpha prior to the Settlement Agreement, his relationship to G. Harrison, and his status as a possible insider to HMCG. Although J. Harrison sold all his stock in Alpha to Brinson as part of the Settlement Agreement, he retained a security agreement in the shares. The terms of the Settlement Agreement also called for Alpha to provide G. Harrison and J. Harrison with monthly financial statements, as well as audited year-end financial statements. Moreover, the overall relationship and history between the parties as asserted in the Complaint raises a plausible claim Defendants are at least non-statutory insiders of the Alpha. After considering these factual allegations, the Court finds that the Complaint raises the possibility that the Defendants were insiders of Alpha at the time of the payments "above the speculative level." Therefore, the Trustee has plausibly pled the insider status of the Defendants.

    b.  The Complaint plausibly alleges the payments took place between ninety days and one year prior to the Petition Date.

Here, the Trustee has alleged that J. Harrison received payments totaling $96,186.31 during the time period between ninety days and one year prior to the Petition Date.[7] The Trustee alleges that HMCG received payments totaling $232,623.90 during that same period.[8] Although, the Trustee does not give a specific date and time of each payment, he does allege a total amount and time period in which the payments were received. As explained in Part I(b) of this opinion, this is sufficient to plausibly state that the transfers took place during the relevant reach back period.

    c.  Trustee has plausibly pled that Alpha was insolvent at the time of the payments to J. Harrison and HMCG.

When seeking to avoid payments to insiders under § 547(b)(4)(B) a trustee does not enjoy the benefit of the § 547(f) presumption of insolvency because that provision only applies to transfers made during the ninety days immediately preceding the case filing. 11 U.S.C. § 547(f). Therefore, to maintain an action for avoidance of an insider preference, a trustee must plead sufficient factual allegations to establish this element.  The Court finds the Trustee has met this requirement.

Even without the presumption, the Complaint contains sufficient factual allegations to allow the Court to reasonably infer that Alpha was insolvent during the insider preference period. The Trustee explicitly alleges throughout the Complaint that the allegedly preferential payments to J. Harrison and HMCG were "made at a time when the Debtor was insolvent." The Defendants contend that such "conclusory statements and threadbare recitals" are merely a "recitation of 11 U.S.C. § 547 with no statement of facts to support it," and therefore do not satisfy the requirements

---

[7] Compl. at ¶ 34.
[8] Id. at ¶ 50.

of Rule 8(a).  Although the language of the Complaint mirrors § 547, the question of whether Alpha was insolvent at the time of the payments remains a factual issue to be decided at trial or some other juncture. *In re Haven Trust Bancorp, Inc.*, 461 B.R. 910, 913 (Bankr. N.D. Ga. 2011). Therefore, the allegation that Alpha was insolvent at the time of the transfers is a factual assertion rather that a "bare recital." *Id*; *see also In re Southern Homes and Ranch Supply, Inc.*, No. 11-12755, 2013 WL 7393247, at *5 (Bankr. N.D. Ga. Dec. 20, 2013) (Finding an allegation that a debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer sufficient to plausibly state a claim of the debtor's insolvency).   Moreover, the context of this action bolsters the plausibility that Alpha was insolvent at the time of the payments to J. Harrison and HMCG. The Trustee seeks to avoid a total of $328,810.21[9] in payments that took place between ninety days and one year prior to the Petition Date. This is a significant amount, and it is reasonable to infer that such payments being made to insiders leading up to the petition date were made at time when Alpha was insolvent. The Trustee does not have to prove each element at the pleading stage; he must only put forth enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of his claim. *Intervioce*, 659 F. Supp. 2d at 1278. Accordingly, the Court finds that the Trustee has plausibly pled the element of insolvency as to the § 547 insider preference claims.

III.    Fraudulent Transfer  Claim Against J. Harrison Under 11 U.S.C. § 548

In Count III of the Complaint the Trustee seeks to avoid certain payments made by Alpha to J. Harrison under 11 U.S.C. § 548(a)(1)(B).[10] To do so, the Trustee must allege that Alpha had an

---

[9] Complaint seeks to avoid $96,186.31 from J. Harrison and $232,623.96 from HMCG.
[10] The Section provides in pertinent part:
(a)(1)  The  trustee may avoid any transfer . . . of an interest of the debtor in property, or obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

interest in the property transferred, that the transfer occurred within two years prior to the case filing, that Alpha did not receive reasonably equivalent value in exchange for the transfer, and that Alpha was insolvent at the time of the transfer or became insolvent as a result of the transfer.

As to whether the transfers took place during the two year reach back period, the Defendants reiterate their previous argument that no transfers could have been made during the reach back period because any transfer from Alpha to J. Harrison occurred on the closing date of the Settlement Agreement, and not on the date of the actual payments. In support, the Defendants again cite to *Kipperman*, where the court found that "the relevant date for determining the statute of limitation on a fraudulent conveyance claim is the date that the debtor incurred the obligation to make the transfer." 411 B.R. at 834. I agree and find that the relevant date is when Alpha became obligated to make payments to J. Harrison.

A debtor becomes obligated to pay under a promissory note on the date of execution of the note. *In re Galbreath*, 286 B.R. 185, 198 (Bankr. S.D. Ga. 2002). Here, the Settlement Agreement was entered no later than June 27, 2007. According to the terms of the Settlement Agreement, Alpha is a guarantor on the J. Harrison Note, with Brinson being the primary obligor. Therefore, upon the execution of the Settlement Agreement Alpha became obligated to make the payments under the J. Harrison Note, should Brinson fail to do so. The Trustee alleges that Alpha has made all payments under the J. Harrison Note and there is no allegation Brinson ever made any payments under the J. Harrison Note. The Trustee, however, does not allege that Alpha was not obligated, as a guarantor of the J. Harrison Note, to make those payments. The Complaint merely alleges

---

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
  (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

that "each of the payments made to J. Harrison within two years of case filing, were made voluntarily by the debtor and were such as the Debtor received less than equivalent value in exchange . . . since the value passed to Brinson."  While this allegation may be true, Alpha incurred the obligation to make those payments on June 27, 2007, which is more than two years prior to the Petition Date. The Court finds that for the purposes of § 548, the "transfer" occurred outside the two year reach back period. Therefore, the Trustee has failed to state a claim for fraudulent transfer under § 548, and Defendants Motion is granted as to Count III of the Complaint.

IV.     Fraudulent Transfer Claims Against J. Harrison Under 11 U.S.C. § 544.

In Count IV, the Trustee seeks avoidance of transfers from Alpha to J. Harrison as constructive fraudulent transfers under 11 U.S.C § 544(b). Section 544(b) of the Bankruptcy Code allows a trustee to use applicable state law avoidance statutes when certain conditions are met. 11 U. S .C. § 544; *Westgate Vacation Villas, Ltd. v. Tabas* (*In re Int'l Pharmacy & Discount II, Inc.*), 443 F.3d 767, 770 (11th Cir. 2005). Here, the Trustee claims that the transfers are avoidable under Georgia's Uniform Fraudulent Transfer Act, O.C.G.A. §§ 18–2–70 *et seq.* Specifically, the Trustee seeks to recover the transfer of the property under O.C.G.A. §§ 18–2–74(a)(2) and 18–2–75(a). In addition, Count IV seeks to avoid transfers made to J. Harrison using § 544(b) and the Federal Debt Collection Procedures Act ("FDCPA"), specifically 28 U.S.C. § 3304.

        a.  Claims Under Georgia Law

To avoid transfers under O.C.G.A. § 18-2-74(a) the Trustee must allege that the Debtor made the transfers without receiving reasonably equivalent value in exchange for the transfer, and was "(A) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B)

17

[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." O.C.G.A. § 18-2-74(a)(2). The Trustee also seeks avoidance under O.C.G.A § 18-2-75(a), which allows the Trustee to exercise the rights and powers of an actual creditor whose claim arose before the transfer. Do to so, the Trustee must allege that Alpha made the payments "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." O.C.G.A. § 18-2-75(a). Both § 18-2-74(a)(2) and § 18-2-75(a) allow the Trustee to recover only those transfers that took place within the four years immediately preceding the Petition Date. O.C.G.A. § 18–2–79

In support of avoiding the payments to J. Harrison, the Trustee has alleged that Alpha received no value in exchange for the payments to J. Harrison because all the benefit of the payments passed to Brinson, rather than Alpha. No value, is certainly not "reasonably equivalent." The Trustee also alleges that at the time of the payments to J. Harrison, Alpha was "engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction."[11] Additionally, the Trustee alleges that Alpha made the payments at a time when it knew or should have known that making the payments would render it unable to pay its debts going forward.[12]  Finally, the Complaint alleges that Alpha made the payments at a time when it was insolvent or was rendered insolvent as a result of the payments.[13] Making a total of $410,977.87[14] in payments at a time when Alpha was insolvent at least raises the implication that Alpha made the payments to J. Harrison at a time

---

[11] Complaint at ¶ 37, 39
[12] *Id.*
[13] Complaint at ¶ 38
[14] Complaint at ¶ 41 (listing the total amount the Trustee seeks to avoid under O.C.G.A. §§ 18-2-74(a)(2) and 18-2-75(a)).

when its remaining assets were unreasonably small in relation to the transaction, or that it knew or should have known that making those payments would render it unable to pay its debts going forward.

However, the Trustee has failed to plead facts that establish the transfers took place during the reach back period, which is four years for claims brought under §§ 18-2-74(a)(2) and 18-2-75(a). For the reasons outlined in Part III the date of the transfer is the date Alpha incurred the obligation to make the payments, which is the date it entered the Settlement Agreement. That date, June 27, 2007, falls more than four years prior to the Petition Date, and is therefore outside the applicable reach period. Accordingly, the Court grants the Defendants' Motion as to the Trustee's state law claims under O.C.G.A. §§ 18–2–70 *et seq.*[15]

b. Claims Under Federal Law

In Count IV the Trustee also seeks to avoid transfers made to J. Harrison within six years of the Petition Date using § 544 and 28 U.S.C. § 3304 of the FDCPA.[16] Under § 544(b)(1) a trustee may avoid "any transfer . . . or any obligation incurred by the debtor that is voidable under applicable law" by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502. The Trustee contends that he can rely on the FDCPA as "applicable law," and take advantage of its six year reach-back period to set aside all payments made to J. Harrison between June 6, 2006, and the Petition Date. The Defendants dispute the use of the FDCPA as "applicable law" within

---

[15] The Trustee also claims that because the IRS is a claimant in this case he may use 11 U.S.C. § 6502 to set aside transfers that occurred within ten years of Petition Date. Section 6502 provides that "[w]here the assessment of any tax imposed by this title has been made . . . such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax. . . " 26 U.S.C.A. § 6502(a)(1). However, for the reasons outlined in Part V the Court finds the Trustee may not use § 6502 to set aside transfers that took place within the ten years preceding Petition Date.

[16] Unlike Georgia's fraudulent transfer laws, the FDCPA provides a six year reach-back period for actions brought under § 3304. 28 U.S.C. § 3306.

the meaning of Section 544(b). Therefore, the issue before the Court is whether a trustee in bankruptcy can step into the shoes of a federal creditor and use the FDCPA as "applicable law" under Section 544(b)(1).

There is a split among courts that have decided this issue.[17] In one corner you have a line of cases championed by the Firth Circuit's decision in *MC Asset Recovery, LLC v. Commerzbank A.G. (In re Mirant Corp.)*, which held that the FDCPA could not be applicable law for purposes of § 544(b). 675 F. 3d 530, 536 (5th Cir. 2012), *see also MC Asset Recovery LLC v. Commerzbank AG (In re Mirant Corp)*, 2010 WL 8708772 at *11, * 18 (Bankr.N.D.Tex.2010), *aff'd* on this issue, *MC Asset Recovery, LLC v. Commerzbank AG*, 441 B.R. 791, 804 (N.D.Tex.2010) *(*"the FDCPA does not contain a private right of action... [and] is a remedy for the exclusive use of the United States*")*; *MC Asset Recovery, LLC v. Southern Co.*, 2008 WL 8832805 (N.D.Ga.2008*)*. In reaching its decision the court in *In re Mirant* relied on Section 3003(c) of the FDCPA, which provides that it "shall not be construed to supersede or modify the operation of ... title 11." *Id.* While noting that the legislative history was "not dispositive" of the issue, the court found support for its view in the statement of the committee chairman "that the [FDCPA] should have no effect on the Bankruptcy Code; even provisions of the Bankruptcy Code making reference to nonbankruptcy law are to be read as if this act did not exist." *Id*. at 535–536 (citing, 136 Cong Rec. H13288 (daily ed. Oct. 27, 1990) (statement of Rep. Jack Brooks)). The court went on to reason that "treating the FDCPA as applicable law under § 544(b) would impermissibly modify the operation of Title 11. Therefore, section 3003(c) does not permit the FDCPA to be used as applicable law under § 544(b)." *Id*. at 535.

---

[17] Neither party has cited any cases which are binding upon this Court nor is the Court aware of any binding authority which has directly addressed this issue.

In the other corner is a line of cases holding the FDCPA can be "applicable law" for the purposes of § 544(b), thereby allowing a trustee to use the FDCPA's statute of limitations. *See In re Kaiser*, 525 B.R. 697, 713 (Bankr. N.D. Ill. 2014) (treating the FDCPA as applicable law and allowing the trustee to use the IRS as the "golden creditor" under 544(b)); see also *In re Tronox Inc.*, 503 B.R. 239, 272-75 (Bankr. S.D.N.Y. 2013); *In re Pfister,* 2012 WL 1144540, at *5 (Bankr.D.S.C. Apr. 4, 2012) (holding transfers were avoidable pursuant to § 544(b)(1) and the FDCPA where the IRS was a creditor); *In re Walter,* 462 B.R. 698, 704–06, 712 (Bankr.N.D.Iowa 2011) (holding trustee sufficiently pled a claim under § 544(b)(1) and the FDCPA); *In re Porter,* 2009 WL 902662, at *20–21 (Bankr.D.S.D. Mar. 13, 2009) (holding that a trustee could step into the shoes of the Small Business Administration and bring claims under the FDCPA and take advantage of the FDCPA's six-year statute of limitations). These cases rely on the language of Section 544, rather than the language of the FDCPA, in finding the FDCPA is applicable law. *See In re Kaiser*, 525 B.R. at 711 (finding that the clear language of Section 544 allows the trustee to step into the shoes in the IRS and use the FDCPA reach back); *In re Tronox Inc*., 503 B.R. 239 (noting that decisions such that in *In re Mirant* "fail to give sufficient weight to the language and purpose of § 544(b)). I agree with the latter line of cases.

Any interpretation of a statute begins with its text. *In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013). Section 544(b)(1) states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502." As the court in *In re Kaiser* explained,

> This section is derivative and "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate." *In re Equip.*

>    *Acquisition Res., Inc.,* 742 F.3d 743, 746 (7th Cir.2014). As a result, "if any
>    unsecured creditor could reach an asset of the debtor outside bankruptcy, the
>    Trustee can use § 544(b) to obtain that asset for the estate." *In re Leonard,* 125 F.3d
>    543, 544 (7th Cir.1997).

525 B.R. 697, 708 (Bankr. N.D. Ill. 2014). In the absence of a contrary definition within the statute

itself, the words within a statute are presumed to have their ordinary meaning. *In re Piazza*, 719

F.3d  at 1261. The ordinary meaning of "applicable law" in § 544 would be *any law* that could be

used by an unsecured creditor to avoid a transfer outside bankruptcy. The clear language of § 544

does not place a limit on which unsecured creditor the trustee may choose, so long as the chosen

creditor holds a claim that is allowable under § 502. Therefore, § 544 allows a trustee to step into

the shoes of a governmental creditor. Accordingly, the Court finds that the FDCPA is "applicable

law" for the purposes of § 544.

Since it has been determined that the Trustee may step into the shoes of a federal creditor

under the FDCPA, the Court must now turn to the issue of whether the Trustee has plausibly

alleged a claim under § 3304 of the FDCPA. As a threshold matter, proceeding under the FDCPA

requires the Trustee to allege the existence of a federal creditor.  The Trustee alleges that the

Internal Revenue Service ("IRS") is such a creditor, and has been since before the Settlement

Agreement. That the IRS is a claim holder in the under lying bankruptcy is not in dispute. However,

the parties are in dispute as to nature and extent of the IRS claim.[18]

To the extent the IRS was a creditor before the allegedly fraudulent transfers were made,

the Trustee may avoid such transfers if (1) the debtor did not receive reasonably equivalent value

in exchange for the transfer, and the debtor was insolvent or became insolvent as a result of the

---

[18] Trustee alleges that the IRS was a creditor of Alpha prior to June 6, 2006, which would place it prior to the June
2007, Settlement Agreement. The Defendants, however, allege the IRS claim arose during the second half of 2010.

transfer; or (2) the transfer was made to an insider for an antecedent debt, the debtor was insolvent

at the time, and the insider had reasonable cause to believe that the debtor was insolvent. 28 U.S.C.

3304(a).

The Trustee has alleged the IRS was a creditor of Alpha prior to the execution of the

Settlement Agreement. The Defendants challenge this assertion and point to the IRS's proof of

claim as evidence that the IRS was not a creditor of Alpha prior to the Settlement Agreement.

Defendants assert that the IRS's proof of claim shows that the IRS only claims as far back as the

September 30, 2010, tax period, which is more than three years after the execution of the settlement

agreement. Thus, according to the Defendants, the Trustee cannot maintain a claim under Section

3304(a) because no federal creditor existed prior to the transfers at issue. I do not agree.

Defendants' argument is flawed because it requires the Court to consider evidence of the

contents of the IRS proof of claim, which the Court is not permitted to do at the motion to dismiss

stage. *See Bank of Camilla,* 939 F. Supp. 2d at 1303 (court's review on a motion to dismiss is

generally limited to the four corners of the complaint). Although a court may consider judicially

noticeable facts on a motion to dismiss, *Tellabs, Inc.*, 551 U.S. at 322, the contents of the IRS

proof of claim are not such a fact. *See In re Harmony Holdings LLC*, 393 B.R. 409, 413 (Bank. D.

S.C. 2008) (finding that while a court may take judicial notice of the fact that a document has been

filed, it does not necessarily take judicial notice of the facts contained within the pleading). The

Court may take judicial notice that the IRS has filed a proof of claim, but it cannot take judicial

notice of the contents of that claim because such facts must be evaluated using ordinary evidentiary

rules, such as hearsay and its exceptions. *Id.*; *see also* Barry Russell, *Bankr. Evid. Manual* § 201:5

(2014 ed) (explaining that while a court may take judicial notice of its own records, it may not take

judicial notice of hearsay allegations as being true merely because they are part of a court record

or file). Accordingly, because the Court cannot consider the contents of the IRS proof of claim at this stage of the case, the Court finds that the Trustee has plausibly plead that Alpha owed a debt to the IRS prior to the transfers at issue.

Furthermore, as explained in Part IV(a) the Trustee has plausibly alleged that Alpha did not make the payments to J. Harrison in exchange for reasonably equivalent value because all the value passed to Brinson, rather than Alpha. Finally, the Court has already determined that the Trustee has plausibly alleged Alpha was insolvent or became insolvent at the time of the transfer to J. Harrison. Accordingly, the Court finds that the Trustee has plausibly stated a claim for avoidance under 11 U.S.C. § 544 and 28 U.S.C. 3304(a)(1).

Next, under § 3304(b) if the United States was a creditor before or after the allegedly fraudulent transfers, the Trustee may avoid such transfers if the debtor made the transfer with without receiving reasonably equivalent value in exchange for the transfer, and (1) the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) the debtor intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due. 28 U.S.C. 3304(b). The Trustee has properly alleged facts to support both claims.

Here, the Trustee has alleged the IRS is a creditor of Alpha, and has been such since before the execution of the Settlement Agreement. The IRS has filed a proof of claim in this case, so at a minimum the IRS proof of claim is sufficient to plausibly establish that a debt was owed to the IRS within six years prior to the Petition Date. The specifics and validity of the IRS's purported claim is not part of the Court's determination because the contents of the proof of claim are outside the Court's consideration at the motion to dismiss stage. Moreover, the Trustee has plausibly

alleged that Alpha did not make the transfers at issue in exchange for reasonably equivalent value, since Brinson got the benefit of the payments to J. Harrison. As explained above in Part III (a), the Trustee has plausibly alleged that Alpha was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or that Alpha reasonably should have believed that it would incur debts beyond its ability to pay as they became due.[19] These allegations are sufficient to put the Defendants on notice of the basis for the Trustee's claims, and show a reasonable belief that discovery will lead to evidence that the Defendants knew of Alpha's financial situation in the lead up to the Petition Date.   Accordingly, the Court finds the Trustee has plausibly alleged an avoidance claim under 11 U.S.C. § 544 and 28 U.S.C. 3304(b)(1)(B).

V.    Insider Preference against HMCG and G. Harrison under 11 U.S.C. § 544 and 28 U.S.C. 3304(a)

In Count VII the Trustee seeks to avoid payments made to HMCG or G. Harrison using § 544 of the Bankruptcy Code and § 3304(a) of the FDCPA. The Court has already concluded that the Trustee may step into the shoes of the IRS under the FDCPA. Therefore, at issue in Count VII is whether the Trustee has alleged an insider preference claim under the FDCPA against HMCG and G. Harrison.

To allege an insider preference claim under § 3304(a), the Trustee must allege the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the debtor was insolvent. 28 U.S.C. § 3304(a)(2). However, unlike the six year look back period provided under § 3304(a)(1), the look back period under § 3304(a)(2) is two years. 28 U.S.C. § 3306(b)(3).  The Trustee, however, argues that this

---

[19] *See* Part III(a).

limitation period is extended to ten years when the creditor is the IRS. In support, the Trustee cites

to 26 U.S.C. § 6502, which provides that "[w]here the assessment of any tax imposed by this title

has been made . . . such tax may be collected by levy or by a proceeding in court, but only if the

levy is made or the proceeding begun . . . within 10 years after the assessment of the tax. . .." 26

U.S.C.A. § 6502(a)(1).  Although it is true that § 6502(a)(1) allows the IRS a ten year period to

bring a collection action, I see nothing in § 6502(a)(1) that provides for an extension of the two

year reach back period outlined in § 3306(b)(3) for insider preference actions brought under §

3304(a)(2). Section 6502(a)(1) provides a "limitation period," rather than a "reach back period" as

provided in § 3306.[20] The Trustee has cited no cases, and the Court is aware of none that supports

the Trustee's position.[21] Therefore, the Trustee's § 3304(a)(2) insider preference claims are limited

to the reach back period provided in § 3306(a)(3).

Here, the Trustee has alleged that Alpha made the payments to HMCG and G. Harrison

pursuant to the terms of the Settlement Agreement, which was executed in June 2007. Therefore,

as the Court explained in Part I, any payments made thereafter would be payments on an antecedent

debt. For the reasons stated in Part II the Trustee has also plausibly alleged that G. Harrison and

HMCG were insiders of Alpha during the FDCPA look back period. In addition, in Part I the Court

determined that the Trustee has plausibly pled that Alpha was insolvent at the time of the transfer.

---

[20] 11 U.S.C. 3306 provides, in pertinent part that "[T]he United States . . . may avoid[] [a] transfer or obligation to the extent necessary to satisfy a debt to the United States . . .." 28 U.S.C. § 3306(a)(1).

[21] The Trustee appears to cite the case of *In re Republic Windows & Doors, LLC*, No. 08-34113, 2011 WL 5975256 (Bankr. N.D. Ill. Oct. 17, 2011) for the proposition that § 6502 extends the reach back period under both state and federal law. I do not read the case that way. In *In re Republic Windows & Doors, LLC*, the trustee attempted to use § 6502 to extend the limitations period, but the court found that the IRS had not filed a claim and therefore the trustee could not use the IRS as a qualifying creditor under 11 U.S.C. § 544. *Id.* at *10 ("[u]ntil the IRS files a claim and have [sic] it become allowable as required by section 544(b), the Trustee cannot rely on the IRS ten-year limitations period"). As a result the court never reached the issue of whether § 6502 extended the limitation period provided in the Illinois fraudulent transfers statute.

Accordingly, all that remains for the Court to decide is whether the Trustee has alleged sufficient facts to plausibly state the "reasonable belief" element of § 3304(a)(2). I find he has.

The Trustee has alleged that G. Harrison and HMCG are insiders of Alpha. As such, they enjoy a close relationship with Alpha, with G. Harrison even serving as a director of Alpha prior to the Settlement Agreement. Moreover, the Trustee has alleged that G. Harrison and HMCG had access to the financial statements of Alpha. In fact, the Settlement Agreement provided that Alpha was to provide the Defendants with monthly financial reports, and yearly audited financial statements. Therefore, because Defendants G. Harrison and HMCG had access to Alpha's financial records they may have had "reasonable cause to believe" that Alpha was insolvent during the relevant reach back period. Accordingly, the Court finds that the Trustee has plausibly alleged an insider preference claim under § 544 and 28 U.S.C. § 3304(a)(2) against G. Harrison and HMCG.

VI.     Recovery from G. Harrison under 11 U.S.C. § 550

Count VIII and IX of the Complaint seek to recover from G. Harrison the value of the payments to HMCG under 11 U.S.C. § 550. Section 550 allows a trustee to recover the transferred property or its value to the extent that the trustee has successfully avoided a voidable transfer. 11 U.S.C. § 550(a).  Count VIII seeks recovery from G. Harrison as an "initial transferee" under § 550(a)(1). Also, as an alternative to recovery under § 550(a)(1), Count IX seeks to recover from G. Harrison as an "immediate transferee" under  § 550(a)(2). The Court finds that the Trustee has plausibly alleged a claim for recovery under both sections.

i.     Initial Transferee

Section 550(a)(1) provides that the trustee may recover the value of the avoided property from either an initial transferee or "the entity for whose benefit such transfer is made." 11 U.S.C.

§ 550(a)(1). The Complaint alleges that HMCG is an alter ego for G. Harrison, and therefore any payments to HMCG are recoverable from G. Harrison as an initial transferee. On its face Trustee's alter ego claim doesn't appear to be futile. However, the Trustee is still required to allege facts to support his claim.

Under Georgia law, to show that HMCG is a mere alter ego of G. Harrison, the Trustee must show "[1] that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; [2] that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and [3] to adhere to the doctrine of corporate entity would promote injustice or protect fraud." *Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006) (quoting *McLean v. Cont'l Wingate Co.,* 212 Ga.App. 356, 359 (1994)).

Here, the Trustee has alleged that HMCG is a corporation completely controlled by G. Harrison, and that all payments to HMCG were actually paid directly to G. Harrison. In addition, the Trustee has alleged that HMCG ceased operating after the Settlement Agreement was entered. Moreover, the overall scheme asserted by the Trustee raises a plausible claim that HMCG was created by G. Harrison to serve as his corporate "alter ego," for the purpose of servicing the MSA. Therefore, the Court finds that the Trustee has properly plead that HMCG is an alter ego of G. Harrison, and that the complaint properly alleges a claim for recovery under § 550(a)(1) against G. Harrison.

ii.   Immediate transferee

Under § 550(a)(2), the trustee may also recover from an immediate transferee. The term "immediate transferee" is not defined in the Bankruptcy Code. However, it is generally accepted

that an immediate transferee is "one who receives a transfer from the initial transferee." *In re Palisades at W. Paces Imaging Ctr., LLC*, 501 B.R. 896, 916 (Bankr. N.D. Ga. 2013). Here, the Trustee has alleged that G. Harrison is the immediate transferee of the payments from Alpha to HMCG. He has alleged that Alpha made at least some of its HMCG payments directly to G. Harrison. The Trustee has also alleged that G. Harrison was in total control of HMCG and was a shareholder of HMCG. These allegations are sufficient to plausibly state a claim for recovery against G. Harrison as an immediate transferee under § 550(a)(2).

### Conclusion

In conclusion, the Court grants Defendants' Motion as to: Count III – Fraudulent transfer claims under 11 U.S.C. § 548 regarding the J. Harrison Note; Count IV(a) – Fraudulent transfer claims 11 U.S.C. § 544 and O.C.G.A. §§ 18-2-74(a)(2) and 18-2-75(a). To the extent that the Trustee attempts to use 26 U.S.C. § 6502 to avoid transfers that occurred during the ten years preceding the Petition Date the Motion is also granted. The Court denies Defendants' Motion as to: Count I – Ordinary preference under 11 U.S.C. § 547 regarding the J. Harrison Note; Count II – Insider preference under 11 U.S.C. § 547 regarding the J. Harrison Note; Count IV – Fraudulent transfer claims 11 U.S.C. § 544(a) and 28 U.S.C. § 3304; Count V – Ordinary preference under 11 U.S.C. § 547 regarding the HMCG Note; Count VI –Insider preference under 11 U.S.C. § 547 regarding the HMCG Note; Count VII – Insider Preference claims under 11 U.S.C. § 544 and 28 U.S.C. § 3304(a) regarding HMCG Note; Count VIII – Recovery against G. Harrison under 11 U.S.C. § 550(a)(1); and Count IX – Recovery against G. Harrison under 11 U.S.C. § 550(a)(2). The Court will enter an order in accordance with this opinion.